UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
WILLIAM FARMER,               :
                              :
        Plaintiff,            :
   v.                         :   Civ. No. 3:08CV1203(AWT)
                              :
SYSCO FOOD SERVICES OF        :
CONNECTICUT, LLC,             :
                              :
        Defendant.            :
------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, William Farmer, brings this action against the defendant, Sysco Food Services of Connecticut, LLC ("Sysco"), alleging employment discrimination on the basis of race. Count One of the amended complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Count Two is brought pursuant to the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a) et seq. ("CFEPA"). Sysco has moved for summary judgment on both counts, and its motion is being granted.

**I.   FACTUAL BACKGROUND**

Sysco is a foreign limited liability company with its principal place of business in Connecticut.[1] It is a foodservice marketer and distributor. The plaintiff, William Farmer, is an African-American male who was formerly employed by Sysco as a Warehouse Supervisor. Farmer began working for Sysco in January

---

[1] Since this lawsuit was filed, Sysco Food Services of Connecticut, LLC, has become Sysco Connecticut, LLC.

1996 when he was hired as an Order Selector. His supervisor at the time was Jeffrey Sault, now Vice President of Operations at Sysco. During the course of Farmer's employment, Sault promoted Farmer twice, i.e., in 2000 to Load Coordinator, and in 2002 to Night Warehouse Supervisor.

Farmer performed satisfactorily in his position, receiving several positive evaluations. During the course of his employment, however, Farmer received comments from his supervisors (Sault and John Banulski, his supervisor subsequent to Sault) regarding his communication skills with fellow employees.

On Friday, November 10, 2006, Farmer received a call from Carlos Gomez, Sysco's Warehouse Manager and Banulski's immediate superior, requesting that Farmer cover another supervisor's shift on November 17. Farmer refused to cover the shift, and the two went back and forth over whether it was Farmer's turn to cover the shift or if Gomez should ask another Warehouse Supervisor. Gomez had in fact previously spoken to another Warehouse Supervisor, Tony Russo, about covering the shift. Gomez needed two shifts covered for the absent supervisor: November 10 and November 17. Russo had agreed to cover November 10. Gomez informed Farmer of this, but Farmer still refused to work the November 17 shift.

Eventually, Farmer grew tired of the conversation with

Gomez, and told Gomez: "Okay, if you want to fire me for not coming in on my day off, go ahead." (William Farmer Dep., Dec. 3. 2008 (Doc. No. 22-4), at 140:14-15) Gomez responded by telling Farmer, "[t]here's two things I know about you, Farmer, is that you don't like to do extra work, and I can fire you." (Id. at 140:16-18.) Gomez, however, did not fire Farmer, opting instead to "sleep over it." (Id. at 121:14-15.) That same day, Gomez told Sault what had occurred. Sault instructed Gomez to send Farmer home when he came in for his shift that coming Sunday, November 12, and to tell Farmer to report to work on Monday, November 13, to discuss the argument.

On November 12, Farmer met with Gomez and Banulski prior to his shift. At the meeting, Gomez told Farmer that he was to go home and return the next day to meet with Sault regarding his behavior the previous Friday, November 10. Farmer began to argue with Gomez again about covering the November 17 shift, and again told Gomez that if Gomez wanted to fire him, he should go ahead and fire him. Gomez instead invited Farmer to resign. Bulanski then intervened and told Farmer to calm down. Bulanski subsequently described Farmer during the conversation as "irate," "very loud" and stated that Farmer had "raised his voice." (John Banulski Dep., Apr. 15, 2009 (Doc. No. 22-10), at 36.)

On November 13, Farmer met with Gomez and Sault. Sault informed Farmer that he was being suspended with pay, pending

Sault's consideration of the appropriate discipline for the previous occurrences. The next day, Sault was approached by another employee, Dan Gold, who asked whether Farmer had been suspended because of a confrontation that occurred on November 9 between Farmer and a fellow Warehouse Supervisor, David Kruzel.

Farmer admits that he and Kruzel had a disagreement on November 9, during which Farmer raised his voice. Sault and Gomez interviewed Gold about the alleged incident between Farmer and Kuzel. Gold reported that he witnessed what he believed to be a "heated argument" between the two, and that Farmer had pointed his finger in Kuzel's face. (Carlos Gomez Dep., Apr. 15, 2009 (Doc. No. 22-11), at 9-10; Jeffrey Sault Dep., Apr. 15, 2009 (Doc. No. 22-14), at 23-24.)

Sysco's Policy On Sexual Harassment & Other Forms of Harassment states in relevant part:

> To assist in preventing or eliminating any unwelcome harassment, such as offensive or degrading remarks, innuendos, intimidation, or exploitation, Sysco Food Services of Connecticut encourages all employees to immediately report instances of suspected harassment which affect the terms and conditions of employment, or create a hostile, intimidating, or offensive work environment. . . . Employees who do not personally experience harassment but who believe that harassing behavior has occurred should bring the problem to the company's attention as well. . . . The Company considers all forms of harassment . . . to be a major offense. Any employee who, after thorough investigation, is found to have violated this policy, will be subject to disciplinary action, up to and including termination of employment with Sysco Food Services of Connecticut. . . . This policy is intended to prohibit offensive conduct, either physical or

> verbal, that threatens human dignity and employee
> morale, and which interferes with a positive and
> productive work environment.

(Def.'s Mem. Supp. Mot. Summ. J. Ex. 14 (Doc. No. 22-15).) At the time of Farmer's employment, Sysco had in place a Workplace Violence Policy intended to "protect . . . employees and others from acts of aggression or violence in the workplace." (Def.'s Mem. Supp. Mot. Summ. J. Ex. 15 (Doc. No. 22-16).) Farmer was aware of both of these policies and had received periodic training on them. Sault and Gomez discussed Farmer's behavior during the course of the week, and concluded that he had been insubordinate and had created a hostile work environment in violation of the policies.

Sault and Gomez reached a decision to terminate Farmer and informed him of this during a meeting on Friday, November 17. An Employee Disciplinary Report was generated that same day for Farmer's termination, which read: "Insubordination – Refusal to Comply with Manager's Instruction To Cover Closing of Facility on Nov 17, 2006. Creating A Hostile Work Environment – Confrontational & Argumentative With other Members of Management – Intimidating Others." (Def.'s Mem. Supp. Mot. Summ. J. Ex. 18 (Doc. No. 22-19).)

## II. **LEGAL STANDARD**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact

to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be

resolved is both genuine and related to a material fact. Therefore, the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." <u>Id.</u> As the Court observed in <u>Anderson</u>: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." <u>Id.</u> Thus, only those facts that <u>must</u> be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d

33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward

with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

### III. **DISCUSSION**

The plaintiff brings race discrimination claims under both State and Federal Law. The court applies the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for both claims. See, e.g., Rogers v. First Union Nat'l Bank, 259 F. Supp. 2d 200, 204 (D. Conn. 2003). The Second Circuit lays out the analysis as follows:

> Once a plaintiff has established a prima facie case of discriminatory treatment, the burden shifts to the defendant to articulate a non-discriminatory, legitimate business reason for the alleged discriminatory action. If the defendant can meet this burden with sufficient specificity, the onus returns to the plaintiff, who ultimately must establish by a preponderance of the evidence that the nondiscriminatory reasons proffered by the defendant are a pretext for discrimination.

Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1045 (2d Cir. 1992); see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citing McDonnell, 411 U.S. at 804); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000). Farmer has not established a prima facie case of discrimination. Moreover,

assuming arguendo that Farmer had established a prima facie case of discrimination, he has not produced evidence such that a reasonable jury could find that the reasons proffered by the defendant were a pretext for discrimination.

### A. **Prima Facie Case**

A plaintiff establishes a prima facie case of racial discrimination by demonstrating that (1) he is a member of a protected group; (2) he was performing his duties satisfactorily; (3) he suffered an adverse employment action; and (4) the adverse action occurred under conditions giving rise to an inference of discrimination. See McDonnell, 411 U.S. at 802; Gallo v. Second Taxing Dist., 507 F. Supp. 2d 164, 172 (D. Conn. 2007)(citing Schnabel, 232 F.3d at 87). The plaintiff's burden in establishing a prima facie case of discrimination is de minimis. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).

The defendant concedes the first three prongs of the plaintiff's prima facie case. To establish the fourth, the plaintiff must show that his employment was terminated under circumstances giving rise to an inference of discrimination. A plaintiff can satisfy this requirement by "showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39

(2d Cir. 2000). To be similarly situated, a plaintiff must be "similarly situated in all material respects" to the individuals with whom he is comparing himself. Shumway v. United Parcel Service, 118 F.3d 60, 64 (2d Cir. 1997); see Graham, 230 F.3d at 39. The employees in question need not have identical employment characteristics to the plaintiff. Rather, the employees "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuiness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001).

Farmer contends that he was replaced by someone outside of his protected class, that he was the only African-American supervisor-level employee, that he was treated dissimilarly from his non-African-American peers when he refused to cover another employee's shift and that his supervisor's remark to him about his work ethic was racially-motivated.

It is undisputed that Farmer was replaced by a Caucasian employee. Farmer contends that he was the only African-American warehouse supervisor at the time his employment was terminated. However, at the time of Farmer's termination, two other African-American warehouse supervisors worked at Sysco: Pamela Barbee and Robert Goodison.[2] Both Goodison and Barbee also reported to

---

[2] While the plaintiff denies that Barbee and Goodison are African-American, the plaintiff makes a conclusory denial without presenting any counter evidence, e.g., what race Barbee and Goodison are if they are not African-American. A conclusory denial is not sufficient to create a genuine issue of fact.

Bulanski, and it was Barbee's shift Farmer refused to cover.

Farmer contends that non-African-American employees have not faced similar consequences for refusing to cover shifts or for insubordination. This contention is not supported by the evidence. Farmer points to the fact that another supervisor, Russo, refused to cover the November 17 shift. However, Russo had already agreed to cover the shift on November 10. Further, Sysco has presented evidence as to which there is no genuine dispute that it terminated a supervisory employee in 2003 for insubordination.[3]

Aside from Russo, Farmer has failed to identify any similarly situated supervisor who refused to cover a shift without consequences. While he states that he is certain that other supervisors have refused to cover shifts "at one time or another," such a conclusory statement is insufficient to create a genuine issue of material fact. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("[C]onclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e)."); Schumway, 118 F.3d at 64 (finding no disparate treatment in case where plaintiff alleges violations of company policy which are "common knowledge" but about which she has no personal knowledge).

---

[3] The plaintiff points to Leo Torres as an employee who was disciplined for insubordination and was only suspended rather than terminated. Leo Torres is not a similarly situated employee. Torres, at the time he was disciplined, was in a lower position than Farmer, was insubordinate on only one occasion in contrast to two occasions, and was not found to have created a hostile work environment.

The plaintiff claims that Gomez's comment to him, that Farmer "[doesn't] like to do extra work," was motivated by racial animus. Farmer states that Gomez did not make that comment to any other non-African-American employee, and he testified during his deposition that he interpreted the comment to mean that Gomez believes that African-Americans do not like to work. In the context in which it was said, the statement was race-neutral. Gomez stated that Farmer does not like to do extra work immediately after Farmer refused to cover an extra shift. Cf. Morris v. Conagra Foods, Inc., 435 F. Supp. 2d 887, 907 (D. Iowa 2005) (finding reference to plaintiff as a "thief" immediately after plaintiff refused to return wage overpayment race-neutral considering the context surrounding the statement).

Finally, the fact that Farmer was terminated by the same person who had promoted him twice weighs against an inference of discrimination. The Second Circuit has recognized that "some factors strongly suggest that invidious discrimination was unlikely. For example, when a person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." Grady v. Affiliated Cent., 130 F.3d 553, 560 (2d Cir. 1997). Farmer was promoted twice by Sault before Salt and Gomez, who was Sault's subordinate, decided to terminate Farmer's employment.

**B.  Pretext for Discrimination**

Assuming arguendo that Farmer has established a prima facie case of race discrimination, he has failed to produce evidence that could support a conclusion that the reasons given by Sysco for terminating his employment were a pretext for race discrimination.  Farmer does not produce evidence that the events that form the basis for Sysco's conclusions that he was insubordinate and created a hostile work environment did not occur.  Rather he merely presents his own subjective views of how his conduct should have been interpreted, which differ from those of the individuals who decided to fire him.

Specifically, Farmer disputes that his confrontation with Kurzel on November 9, 2006 created a hostile work environment, and that his conduct during his encounters with his supervisors on November 10 and 12, 2006 was insubordinate.  However, he does not produce evidence that could support a conclusion that Sysco's characterization of events was unfounded or in bad faith.

When an employer reaches a conclusion based on an incident that is admitted to have occurred, mere disagreement with the employer's characterization of events, standing alone, is not sufficient to support an inference of pretext for discrimination. See Ofoedu v. St. Francis Hosp., No. 04-1707, 2006 U.S. Dist. LEXIS 68704, at *63-64 (D. Conn. Sept. 13, 2006)("Plaintiff's disagreement with the conclusions his supervisors drew from

incidents that are admitted to have occurred is not evidence that the supervisor's appraisals are pretext, designed to mask discrimination."); see also Gaudio v. Griffin Health Servs. Corp., 733 A.2d 197, 220 (Conn. 1999) ("[T]he proper standard for determining the existence of just cause is not whether the employer correctly concluded that the employee had engaged in misconduct; rather, it is whether the employer had a good faith and reasonable belief, based upon substantial evidence, that the employee had done so."). Thus, the inquiry is not whether Farmer subjectively disagrees with the reasons given for his termination, but whether Sysco acted in good faith, supported by substantial evidence. Farmer has failed to create a genuine issue as to whether Sysco did so.[4]

## IV. CONCLUSION

For the reasons set forth above, defendant Sysco's Motion for Summary Judgment (Doc. No. 21) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendant and close this case.

---

[4] The plaintiff claims that subsequent to his termination, the defendant alleged another incident in which the plaintiff created a hostile workplace—this time based on the plaintiff's use of profanity. Insofar as the plaintiff claims this event indicates that Sysco has given inconsistent reasons for Farmer's termination, Farmer's Employee Disciplinary Report reads in part: "Confrontational & Argumentative With other Members of Management." A later statement that Farmer used profanity during the events in question merely details the Disciplinary Report, as opposed to conflicting with it. Cf. Coleman v. Quaker Oats Co., 232 F.2d 1271, 1286 (9th Cir. 2000) (finding that later reasons for an employee's termination which detail the original reason are not inconsistent reasons).

It is so ordered.

Dated this 28th day of September, 2010, at Hartford, Connecticut.

___/s/AWT___<br>
Alvin W. Thompson<br>
United States District Judge